Page 23, 0300, Eby-Brown Company, LLC, a Delaware Women's Library Company, advocated by Melinda Payne, v. Imart Stores, LLC, and Isaac Samara, appellate by Dandy Garbus. Thank you. Mr. Garbus. Good afternoon. Good afternoon, ladies and gentlemen of the judicial panel. Dan Garbus on behalf of the appellant slash defendant in the underlying case, Issam Samara. I appreciate the time and effort that your honors have done in reading all the briefs, so I will try not to reiterate what's already in the briefs, but expound on, you know, the briefs and if you have any questions of me. This case is about errors involving accepted and established laws and procedures regarding discovery. The underlying plaintiff in this matter, Eby-Brown, filed a motion for default, which was up on January 11, 2023, supposedly because my clients, or my client, because obviously the other ones are in bankruptcy, but my client had not complied with discovery requests. Unfortunately, what wasn't evident when the motion for default was filed was that four days prior, all of the interrogatories and outstanding discovery requests were responded to by my client. Unfortunately, at the motion for default, the trial court did not allow a briefing of that motion for default. Instead, they entered the default and set the matter for prove-up. Procedurally, they should have allowed my client an opportunity to brief that motion for default and provide proof that they did respond to the discovery requests. Had a proof of service been tendered, counsel? Excuse me? Had a proof of service of the answers to the discovery been tendered or filed? I do not believe. It might have been filed. I wasn't the attorney of record at the time, so I believe it was. I believe there was emails indicating to Mr. Cain, who's the plaintiff's attorney, both in the underlying case and in the appeal right here. But, yes, they did respond. Now, mind you, the plaintiff will say, well, the discovery was not complete, or it wasn't properly, the proper documents weren't provided. If that was the case, a corresponding 201K communication should have been had instead of jumping the gun and filing a motion for default, which the plaintiff has done all along in this case, including the actual initial tendering of discovery, tendering it prior to the answer even being due, which I pointed out in my brief. At the end of the day, the trial court was probably exasperated with my client. No doubt, I get that. But at the same time, there's procedures that need to be followed before a default is entered against a defendant for not complying with discovery requests. Those were just completely thrown out the window, and as a punishment, a default was entered. Now, after that default was entered, more procedural errors happened. For instance, on the March 1, 2023, proof of hearing, the defendant's counsel at the time, Raib Shalabi, was allowed to withdraw, and he did, in fact, withdraw from the case. And moments later, a default judgment was entered against unrepresented defendants who were previously represented by Mr. Shalabi. By law, they should have had at least 21 days to get another attorney or at least been on the call themselves. None of that was there, which is why the judge vacated that default judgment when I filed that motion. Unfortunately, vacating that default judgment without vacating the default didn't necessarily give the defendants any relief. It just basically delayed the inevitable, which at this point was a default judgment being entered. Now, that default judgment, which was entered on May 24, 2023, the defendant wasn't allowed to present any defenses. It was a prove-up, simply a prove-up. If an opportunity had been presented to at least give some kind of a defense, then it would have been more appropriate if a judgment was actually entered. But a judgment was entered without an opportunity to present any of these defenses. In addition to that, Just a quick question. You had the opportunity to present defenses as to the amounts alleged. You're saying the original default is those defenses, right? Yes. Okay. The defenses that I'm talking about, Your Honor, is the 201K issue. The 201K issue. The other issue which is brought up in the briefs is the joint and several liability and various different contracts that were entered into with EB Braun by the various defendants. There was no provisions of cross-polarization or cross-liability or guaranteeing each other's debts. These were separate entities, separate individuals, and yet an entire judgment was entered against all of them, jointly and several. But that was litigated. You did have a chance to make that argument at the second summary, the second default judgment hearing. I did make that argument, Your Honor. Unfortunately, at that point, it was basically a foregone conclusion that a judgment was going to be entered. And to make matters worse, the trial court wound up entering punitive damages a month and a half later against my clients for consumer fraud, even though those are business-to-business transactions. And the only reasonable explanation is that the trial court wanted to penalize my client for actually vacating the previous default judgment. I can't see any other reason. Why wasn't it granted? What changed from the March 1, 2023 date to the May 24th proof of date, where $500,000 of punitive damages was added on to the total? In addition, the attorney petition was never provided by the Plaintiff's Counsel. $788,000 of attorney's fees in less than a year's time was supposedly incurred by E.B. Brown to get a default judgment. A default judgment, mind you, that didn't have much discovery because we didn't comply, supposedly. So what was that $788,000 case attorney's fees for? There's no breakdown. A petition should have been provided, and a briefing or some kind of a hearing should have been done on those attorney's fees. Same thing with the costs. To go back to the deposition, depositions were scheduled. No communication prior to the deposition was done by the Plaintiff. There's no email showing, oh, are you guys going to attend the depositions in the middle of the holiday season of 2022? No, they just proceeded with the depositions, and then they taxed those costs on to the defendants for supposedly not showing up. And custom and practice has always been, when I do a deposition notice, I'll follow up with an email or a call, hey, are you guys going to come on this date, on such and such date? And if you can't, can you provide me other dates that are more amenable to the witness and yourself? None of that was done. Same thing with the interest. They were excessive. We couldn't really provide our defenses to that because, again, default was already done. It was just on the amounts of what was in the contracts, which we would have said were usurious, because they were high, 12% per month. But namely, another problem with all of this was defendants filed for bankruptcy prior to that default judgment being entered, and the court still steamrolled into entering a judgment against the remaining non-bankruptcy filing defendants, which at the time was Imart and my current client, Issam Samara. As I already alluded to, discovery sanctions were excessive. Getting a default is an excessive penalty for violating discovery. There should have been more communication between the counsels before a motion for default was ever done. And I believe only one 201-K letter was ever issued, which was in early July of 2022. Since that date, no other 201-K communications was done between Plaintiff's counsel and defense counsel. Are there any questions that the panel has for me? Okay, thank you. Thank you for your time and consideration. Thank you. Mr. King? Thank you, Justice. May it please the Court. The entry of a default order pursuant to Supreme Court Rule 219C is one consequence a party may incur who either fails or refuses to comply with the court's orders and rules. Once the court enters a default order, it may then conduct a prove-up hearing on damages prior to entering a final judgment. A party who a default order has been entered against, of course, is not without a procedural remedy. A party can move within 30 days to vacate a default order. If they fail to do that, which is the case here, they can subsequently move under Section 214.01 for relief from a default order. 214.01 requires that certain requirements be met in order to vacate a default. Moreover, once it has been entered, once a default order has been entered by the trial court, it's within the trial court's discretion to vacate that order. The questions before this Court this afternoon are first, did the trial court abuse its discretion when on January 11, 2023, it entered an order of default? And second, did the trial court abuse its discretion when it entered a default judgment on May 24, 2023? The Appalach must show that the trial court abused its discretion when it entered the default order on January 11, 2023. The cases are pretty well set in Illinois as to what constitutes an abuse of discretion. This Court would need to find that the trial court acted arbitrarily and without conscientious judgment or its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted from the Court's decision. We submit that in this case, the trial court in no way abused its discretion. It was the defendants, and I will refer to all of the defendants for purposes of argument, who abused the Illinois process, the legal process. The January 11 default order is not based on a violation of one order. It's not based on a violation of a discovery order. It's based on multiple violations that occurred over the course of the case. There were repeated court violations. There were multiple failures to comply with the rules of discovery, and most importantly, which was completely ignored in my opponent's papers and in its discussion this afternoon with the Court, there was a July 26, 2022 order entered that froze the assets of these defendants. It denied our request and application for receiver but froze their assets. It entered a number of other issues within the case. We then, as the case proceeded, had great difficulty in obtaining discovery, and as a consequence, we were required to file motions to compel to get discovery. Most importantly, in the May 2023 hearing on the final judgment, there were no contrary affidavits brought to the Court. There was no contrary evidence. EBY Brown presented evidence, affidavits, and support for each item that it requested in the final judgment order. The only objection that was raised at that hearing was that the defendants were not subject to joint and several liability, and it was argument of counsel. There was no law presented. They didn't provide a brief. They had ample opportunity to do that, and they had ample opportunity to present evidence, contrary evidence, maybe even an explanation as to why the defendants had violated the Court's asset freeze order. In 1888, Jacob EBY founded a tobacco and sundry distribution business in Aurora, Illinois. Over the next 136 years, that business has grown into a leading national distributor, and its offices remain in DuPage County, Illinois. It was in 2018 that the defendants approached EBY Brown, Mr. Rizek, who is not here today because he filed for bankruptcy court protection, and Mr. Samar, who is here today and before this Court. They had a 30-plus chain of gas stations known as IMARTs, and they wanted EBY Brown to supply them with candy, tobacco, and other sundry products, which is what the company does. They all entered into contracts, and they entered into personal guarantees. And those personal guarantees are important because the signatories guarantee the liabilities of any other customer of EBY Brown in which the customer or any owner of the customer owned an interest. And Mr. Rizek and Mr. Samar are partners, and they own these two entities, frankly, which were not in compliance with the Illinois Secretary of State's requirements for a valid corporation. Almost immediately upon doing business with EBY Brown, they began to default on their financial obligations. On February 15th of 2022, EBY Brown issued a notice of default to the defendants, demanding full payment of over $6 million that was now due. The notice of that default shined a light on what was going on. Further investigation revealed the defendants were sending checks to EBY Brown that were written from phony bank accounts. They were issuing checks and funds from bank accounts with insufficient funds, and they were sending payments to EBY Brown electronically from accounts with insufficient funds. EBY Brown realized it had been duped to the total sum of over $6 million. So on March 4th of 2022, EBY Brown files the instant case, and it seeks appointment of a receiver and that assets be frozen so they're not dissipated, so that it can get relief for what has happened to it. Then the procedural games begin. First, the defendants, at the hearing on the motion for appointment of a receiver, the first one, claimed that the service was ineffective because the caption, not the address, did not have each of the names of the defendants. The court agreed and required EBY Brown to send an alias summons, which it did. Second, after the alias summons was issued, the defendants' counsel refused to accept service of process. Third, EBY Brown, because of constant evasion by these defendants, and the record supports this, had to file a motion for service by posting because of the defendants' activities in trying to evade service of process. On April 14th of 2022, these defendants were served effectively by posting. On April 28th, the hearing was rescheduled for the appointment of a receiver and to preserve assets. The defendants, as is their right, at that time asked for a change of judge, which they are entitled to do. As a consequence, the hearing was delayed and the case was reassigned to a new trial judge. On May 15th, when their answer was due, they didn't file. On June 2nd, EBY Brown filed a motion for default, the first motion for default, asking the court and applying for relief that they file their answer or other pleading. The court gave them additional time, denied the motion for default, and gave the defendants another 30 days to answer the complaint. In addition, at that time, EBY Brown sought a protective order because the defendants were wrongfully contacting EBY Brown executives. That order was granted. June 22nd, there's a status hearing. Hearing for appointment of a receiver is set for July 26th. Counsel is present for the defendants. On July 26th, probably one of the more important orders for the court to keep in mind as it reaches its decision, the trial court found that the motion for appointment of a receiver was denied. We disagree with that. But more importantly, the defendants were enjoined from directly or indirectly transferring and or disposing of any assets until further order of court. They were also directed, the defendants, to return EBY Brown's property. In addition, the court directed that the defendants, by August 31st, provide a list of all of their real property. On September 15th, EBY Brown had to apply for a motion to compel discovery. Although discovery had been issued over 60 days prior, there were no answers to interrogatories and there were no documents produced. In addition, the court had entered a rule to show cause against a defendant, Rizak, for violating the court's protective order. Would that have been with regard to the transfer of property or what was the rule issued for? The rule was issued, Your Honor, because Mr. Rizak had been calling EBY Brown executives. We sought a protective order. We first informally tried to have it stopped. Then we sought a protective order, which the court granted. Despite the entry of a protective order, Mr. Rizak continued. We filed a rule to show cause, which was issued and sanctions were issued against the defendant, Rizak. The second or third violation by the defendants was they had not complied with the court's July order and had not produced, even by August 31st, at the October 26th hearing, a list of the real estate property that they owned. The court at that time granted EBY Brown's motion to compel. This is on the October 26th hearing. And it directed the defendants to answer interrogatories by November 18th, to answer outstanding document requests that remained unanswered by December 16th, to produce records by December 16th, and by November 18th to collect and produce property that had been previously ordered to return to EBY Brown and to provide it to them by November 18th. And in addition, what the court added to that second request to the defendants by order is that the list of property would have to be verified under Section 1109 of the Illinois Code of Civil Procedure. That didn't happen. At the October hearing, EBY Brown saw and got permission, received permission, excuse me, to issue third-party subpoenas to banks and financial institutions. The reason for that was there were no documents that were forthcoming from these defendants. As these documents began to come in, what was revealed was since the entry of the July 2022 asset freeze order that these defendants had dissipated over $11 million from their accounts in direct violation of the court's July order. It was at that time that EBY Brown filed its second motion for default, which was set for January 11th, 2023. At that time, the defendants had counsel. At that time, the defendants had an opportunity to provide evidence. They had an opportunity, following the entry of the order, to have moved for reconsideration and to have moved to vacate within 30 days. They did none of those things. Was that order entered pursuant to 219C? Did the judge make that record? The judge found, Your Honor, Justice, I apologize, that it was for violation of multiple orders. Okay. I'm just asking, did he cite 219C? He, I'm apologizing. Did your motion cite 219C? Our motion cited 219C, yes, that's correct. I'm looking at the court order of January 11th, 2023, and it does not specifically refer to 219. The court then set the matter down for prove-up. At that time, defendants' counsel withdrew. The court proceeded. That order is not before the court because it was vacated. New counsel appeared. New counsel filed a motion to vacate the January 11th, 2023 order, and that motion was denied. At no time, even as of today, there has there been any evidence introduced by these defendants to provide a good faith basis to show a meritorious defense or to contradict the evidence that was before the court. It's important to remember that the complaint that E.B. Whitebrown filed was verified, that it had filed affidavits that were verified, and other information supporting the damages, all verified. And when the defendants filed a petition to vacate under 1401, that that petition was answered by E.B. Brown and essentially denied. So the parties were at issue on May, as we went into May 24th. And at that time, the defendants did not introduce any evidence. They did not present any witnesses, and they didn't call E.B. Brown's witness who was sitting there in the courtroom, who had signed affidavits and given testimony to support the application for damages. All that was done was there was an objection made, which is set forth in the record and in the transcript, by the defendants that the amount being sought was not being apportioned among the defendants. There was no objection over the interest that was being awarded. There was no objection over the amount of the attorney fees that were being awarded. There was no objection as to the actual damages that were incurred. None of those objections were lodged. Everything was waived. The only thing that was objected to was the apportionment. And the complaint, which is verified, sets forth that these defendants are liable for the judgment in dollars between all of the customer accounts for all of the companies that they were operating. Mr. Cain, could you wrap it up? Yes. Your time is up. Thank you very much. I'm loquacious this afternoon. I apologize. I went across the street and had a Coca-Cola. So, in conclusion, we would ask that the court affirm the trial court's entry of a default judgment on May of 2023. Find that the trial court did not in any way abuse its discretion, neither on January 11th of 2023 or in May of 2023, when it entered its final default judgment order. Thank you very much. Are there any questions for Mr. Cain? I do. Thank you. Thank you. Mr. Garbus, any rebuttal? Yes. Ladies and gentlemen of the appellate panel, so Mr. Cain mentioned that the court did not abuse its discretion on January 11th, 2023. However, it is clear that on January 11th, 2023, when the motion for default was presented to the court, rather than setting a briefing schedule and actual hearing date, the judge just entered a default. So, therefore, that was an abuse of discretion. You're asking for a default for 219C violations and possibly other orders that were violated, yet you didn't have the need to have the defendant actually respond in writing and have a hearing on it. You just proceeded with a default. That's an abuse of discretion. In the notice of motion for the hearing on the motion for default, did it ask for hearing and stancher in that notice of motion? I do not believe so. Do you know? I don't know for sure. I don't have it in front of me. I do not believe it said hearing and stancher. Okay. Well, we can check the record, obviously. But we definitely do not have on this record an appeal to transfer from that date, correct? No, I do not believe so. I do not believe so. And then Mr. King had also brought up that there was a freeze on the assets in a July 2023 order. This is a business that's up and running. So the $11 million that supposedly was dissipated, there's no evidence before your honors that it was actually dissipated and kept by my clients. It was spent in the ordinary course of operating their stores. I mean, they have other vendors that have employees. That $11 million, that sounds like a lot of money, was actually operating costs, operating expenses. It wasn't like they were seconding out the money. Well, we never went on a trial in the merits, so we don't know exactly what happened with that $11 million. So other vendors were being paid but not EB Brown? Your honor, not only other vendors were being paid, EB Brown was being paid. And the reason why Mr. Rizek, who's not before your honors, was reaching out to EB Brown executives was to work out a payment plan. Unfortunately, Mr. King wouldn't allow his client to talk to my client. That's what I've been told. I wasn't there. Obviously, I wasn't representing him at the time. But that's what the indication was after I talked to Mr. Samara. And then they mentioned phony accounts. Again, there was no trial in the merits here. So everything that Mr. King is bringing up to you guys about, well, they did this and they did that, there's no merits here. There's no evidence presented. It's just their word versus no word on our side because we couldn't present our defenses because we were defaulted and immediately self-approved them. So everything that they're saying that we could have called this person or called that person, the judge specifically ruled it self-approved up. Here's the money. It's already a default. So what defenses would we have presented once a default was entered? I don't know if you have any other questions, Your Honors. Did you ever file a motion to vacate the default order? Yes. I did a motion to vacate both the January 11th, at the same time, 2023 order and the March 3rd, 2023 order. The judge granted it in part and denied it in part. He granted it in part by vacating the March 1st, 2023 default judgment order simply because the point was clear that he erred because they were unrepresentative at the time that the default judgment was entered. But he did not vacate the January 1st or January 11th, 2023 order. But there were two different orders, right? Yes. There was a default order and a default judgment. The default order was January 11th, 2023. The default judgment was on March 1st, 2023. Both of those dates before I formally became retained by my client. But you filed a motion to vacate both of those. Hold on. You filed a 1401 motion because you had to because that motion to vacate was never filed in time. Yes. Yes, I was retained after the 30-day period of the March 1st date passed. So I had to file a 21401 petition for both orders. So I need to understand now. In the January 11th order, you filed a motion to vacate that order? Yes. Or you filed a 1401 motion to vacate them both? What were you doing? I filed a 21401 petition motion to vacate the two orders, the January 11th order and the March 1st order. Because when the petition was filed, it was outside the 30 days of both orders. So I had to file it as a 21401 petition. Any other questions? No other questions. Thank you. Thank you for your time and consideration. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.